TIMOTHY COURCHAINE
United States Attorney
District of Arizona
ANSHUL KRISHN
MICHAEL R. LIZANO
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: anshul.krishn@usdoj.gov
        michael.perez-lizano@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 24-03569-JCH-EJM |
| Plaintiff, | |
| vs. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| Christopher Javier Zuniga, | |
| Defendant. | |

The United States of America, through its attorneys, respectfully submits its sentencing memorandum in the above-captioned matter. The sentencing hearing is currently scheduled for September 25, 2025, before the Honorable John C. Hinderaker, United States District Court Judge.

The presentence report (PSR) has accurately calculated the defendant's total offense level at 42. (PSR ¶¶ 30-38.) Both parties have stipulated to a binding sentencing range of 36 to 60 months in prison, and for Count 2 to run concurrently to the sentence received for Count 1, as contemplated by the plea agreement. The government agrees with these calculations and respectfully requests that this Court accept the plea agreement. The plea

does not allow for the defendant to seek a downward variance from the stipulated sentencing guideline range.

Defendant is facing sentencing for his active role in distributing large amounts of fentanyl and possessing multiple firearms while being an unlawful user of and addicted to a controlled substance. (PSR ¶ 3.) The PSR appropriately represents the facts of this serious case.

What sets this case apart from others is the extent of the defendant's involvement with distributing large quantities of drugs within the United States. The defendant was involved in receiving fentanyl loads in bulk in the Phoenix area from couriers who had successfully smuggled the narcotics into the United States. When agents executed a search warrant, the defendant barricaded himself inside. Agents had to force their way in. (*See* Exhibit 1.) Once inside the house, they found a phone in the toilet and other broken phones in the bathroom (*See* Exhibit 2), several guns (*See* Exhibit 3), some of which were loaded with ammunition (*See* Exhibit 3), and several rounds of ammunition. (*See* Exhibit 4.) Agents found a bucket next to the toilet with water and what they believed was some sort of a cutting agent for drugs. (*See* Exhibit 5.) Agents also found several thousand dollars in cash. (*See* Exhibit 6.) The defendant also had a large quantity of fireworks. (*See* Exhibit 7.) The agents assessed the value of the fireworks to be several thousand dollars and suspected that the fireworks may have been used to facilitate a money laundering scheme.

This was not a small operation. There were items found in the house that led the government to believe that there was a well thought out plan in place with security cameras and tactical gear in the house. (*See* Exhibits 8-10.) The defendant's home also contained a shrine to La Santa Muerte, a well-known "narco-saint". (*See* Exhibit 11.) This shrine was at both the homes involved in this case and demonstrates the defendant's commitment to the narco trafficking lifestyle.

When sentencing the defendant, this Court must assess the nature and circumstances of the offense and the history and characteristics of the defendant. The way the defendant's distribution operation was set up indicates that this was a well-established operation using

a tow truck business as a cover. The defendant was receiving large quantities of pernicious dangerous drugs that are not only dangerous in nature but also devastate the social fabric in Arizona and across the United States. The defendant's attempt to destroy the phones also shows that he did not want the agents to discover the full scope of his operations.

Although the defendant does not have any prior convictions, his 2020 Possession/Use of Narcotic Drug case highlights the defendant's involvement with fentanyl from a very early age. In that case, the defendant admitted to possessing 174 pills for personal use. What stands out is the fact that defendant and his brother started the tow-truck business in 2020, the same tow-truck company that was used to facilitate the distribution scheme. [1]

The recommended sentence is appropriate because it not only corresponds to the quantity of drugs involved in the case but also the extensive operational structure that the defendant had to receive large quantities of drugs. This sentence will reflect the seriousness of the offense and provide just punishment.

The government acknowledges that the defendant's guideline range of 360 months to 420 months is high. But the nature and circumstances of this case warrant a sentence that reflects the seriousness and deters the defendant from committing further crimes. The government believes that a 60-month custodial sentence is appropriate because it is a substantial variance from what the defendant would have faced without the stipulation in the plea. The government recognizes that defendant is someone with limited criminal history but there is certainly a need to protect the public from further crimes from the defendant and that need for protection and deterrence go hand in hand.

The need for such punishment also arises from some of the egregious actions the defendant took during the investigation and comments he made to the agents. In one instance, the defendant followed federal law enforcement agents in his truck while they

---

[1] In March 2024, the defendant's brother was arrested for possessing approximately 600,000 suspected fentanyl pills, further corroborating that this has been a family affair. Hence, highlighting the need for deterrence.

were conducting the investigation. The defendant encountered the agents on the day when they were trying to remove court-authorized GPS trackers from the tow truck involved with the scheme. The defendant saw these agents, yelled at them and then followed them for 25 minutes in his truck. Agents had to request Phoenix Police Department to assist. When Phoenix Police officers stopped the defendant, they found a taser in his possession. The defendant later admitted that he considered tasing the agents or running them over with his car. Sometime later when Phoenix Police officers offered to return the trackers to the rightful owners, the defendant told the officers that if the trackers belonged to the "feds" then they could come get it from him. This aggressive behavior highlights the pressing need for the sentence imposed to promote respect for the law.

For the defendant's actions in this case, the government also recommends a sentence of no less than 60 months imprisonment, followed by thirty-six months of supervised release. Additionally, the defendant must pay the restitution of $650 for destroying the government owned GPS trackers. This sentence sufficiently reflects the seriousness of the offense of distribution of dangerous drugs into the US, and the government sincerely hopes that this sentence will promote respect for the law and deter the defendant from committing further crimes.

Respectfully submitted this 16th day of September, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/Anshul Krishn*
ANSHUL KRISHN
MICHAEL R. LIZANO
Assistant U.S. Attorneys

Copy of the foregoing served electronically or by other means this 16th day of September, 2025, to:

All ECF Participants